No. 25-2134

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

JAMON RIVERA, ET AL.,

*Plaintiffs-Appellants,*

v.

KJELL ANDERSON, IN HIS OFFICIAL CAPACITY AS WASHINGTON STATE BUILDING CODE
COUNCIL MEMBER, ET AL.,

*Defendants-Appellees,*

CLIMATE SOLUTIONS, ET AL.,

*Intervenors-Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Western District of Washington
No. 2:24-cv-00677-KKE
The Honorable Kymberly K. Evanson

---

### OPENING BRIEF FOR PLAINTIFFS-APPELLANTS

---

Callie A. Castillo
Devon J. McCurdy
BALLARD SPAHR LLP
1301 Second Ave., Ste. 2800
Seattle, WA 98101
(206) 223-7000
castilloc@ballardspahr.com
mccurdyd@ballardspahr.com

*Counsel for the Homeowners, Builders,
Suppliers, and Unions*

J. Mark Little
Christopher E. Tutunjian
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, TX 77002
(713) 229-1234
mark.little@bakerbotts.com

Scott Novak
BAKER BOTTS L.L.P.
700 K St., N.W.
Washington, DC 20001
(202) 639-1316

Clifford S. Davidson
Amit D. Ranade
Mallory L. B. Satre
SNELL & WILMER L.L.P.
600 University St., Ste. 310
Seattle, WA 98101
(206) 741-1420

*Counsel for the Utilities*

# TABLE OF CONTENTS

Table of Contents ...................................................................................... i

Table of Authorities ............................................................................... iii

Introduction ............................................................................................. 1

Jurisdictional Statement ........................................................................ 3

Issues Presented ..................................................................................... 3

Statement of the Case ............................................................................ 3

     I.     EPCA regulates the energy use and efficiency of many appliances and expressly preempts state and local regulations concerning the same. ................................................................ 3

     II.    The SBCC adopts the Energy Code and thereby imposes restrictions on the energy use and efficiency of EPCA-covered gas appliances. ......................................................................... 5

     III.   Plaintiffs bring this action to challenge the Energy Code as preempted by EPCA. ................................................................ 6

     IV.   Defendants move to dismiss, and the district court holds that the Eleventh Amendment bars Plaintiffs' suit and dismisses their complaint. ............................................................................ 7

Summary of Argument ........................................................................... 8

Standard of Review ............................................................................... 10

Argument ............................................................................................... 12

     I.     The SBCC members and the Attorney General are amenable to suit under the *Ex parte Young* exception to Eleventh Amendment immunity. .............................................................. 12

          A.    *Ex parte Young* permits suit against state officials that have some connection with the enforcement of violations of federal law. .......................................................... 12

B.     The SBCC members' promulgation of the mandatory Energy Code suffices to trigger the *Ex parte Young* exception. ...................................................................18

      1.     The SBCC members promulgated a mandatory Energy Code that local officials must enforce. .............19

      2.     The SBCC members' adoption and maintenance of the mandatory Energy Code far exceeds *Ex parte Young*'s connection requirement. ...................................22

      3.     The district court erred in ruling that the *Ex parte Young* exception did not apply to the SBCC members.....................................................................27

C.     The Attorney General also is amenable to suit under *Ex parte Young*. ...........................................................35

II.     Plaintiffs satisfy the requirements of Article III standing. ..................38

    A.     The Energy Code is inflicting actual, concrete injuries on Plaintiffs. ...............................................................39

    B.     Plaintiffs' injuries are traceable to and redressable by Defendants' actions...............................................43

Conclusion ........................................................................................45

Form 8. Certificate of Compliance for Briefs ...........................................47

Certificate of Service ...........................................................................48

ii

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Ahmad v. Town of Springdale,*
    314 P.3d 729 (Wash. Ct. App. 2013)....................................................20

*Berge v. Gorton,*
    567 P.2d 187 (Wash. 1977) ................................................................37

*Bibeau v. Pac. Nw. Rsch. Found. Inc.,*
    188 F.3d 1105 (9th Cir. 1999) ...........................................................38

*Cal. Rest. Ass'n v. City of Berkeley,*
    89 F.4th 1094 (9th Cir. 2024) ..........................................5, 6, 40, 41

*City & County of San Francisco v. U.S. Citizenship & Immigr. Servs.,*
    944 F.3d 773 (9th Cir. 2019) .............................................................40

*Coal. to Def. Affirmative Action v. Brown,*
    674 F.3d 1128 (9th Cir. 2012) ............................ 12, 14, 17, 18, 24, 25

*E. Bay Sanctuary Covenant v. Biden,*
    993 F.3d 640 (9th Cir. 2021) .............................................................42

*Frank v. Lee,*
    84 F.4th 1119 (10th Cir. 2023) ....................................................25, 26

*Frew ex rel. Frew v. Hawkins,*
    540 U.S. 431 (2004).........................................................................13

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982).........................................................................42

*Hay v. Tollen,*
    No. 50227-5-II, 2018 WL 3239278 (Wash. Ct. App. July 3, 2018)....................19

*Helicopter Ass'n Int'l v. Hawai'i,*
    No. CV 23-00083 LEK-WRP, 2023 WL 6850157 (D. Haw. Oct. 17, 2023) ....................................................................26

*Hunt v. Wash. State Apple Advertising Comm'n*,
    432 U.S. 333 (1977)..................................................................41

*Leonard v. Clark*,
    12 F.3d 885 (9th Cir. 1993) ................................................43

*Los Angeles Cnty. Bar Ass'n v. Eu*,
    979 F.2d 697 (9th Cir. 1992) ........................................ 13-18, 24, 25

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..............................................................39

*Mecinas v. Hobbs*,
    30 F.4th 890 (9th Cir. 2022) .......................................*passim*

*Mecinas v. Hobbs*,
    468 F. Supp. 3d 1186 (D. Ariz. 2020) ...............................14

*Mi Familia Vota v. Abbott*,
    977 F.3d 461 (5th Cir. 2020) ..................................30, 31

*Mulgrew v. U.S. Dep't of Transp.*,
    No. 23-CV-10365 (LJL), 2024 WL 3251732 (S.D.N.Y. June 20,
    2024) ..................................................................25, 26

*Mulhern Gas Co., Inc. v. Rodriguez*,
    No. 1:23-CV-1267, 2024 WL 3992588 (N.D.N.Y. Aug. 29, 2024) ........... 31-33

*NASD Disp. Resolution, Inc. v. Jud. Council of State of Cal.*,
    488 F.3d 1065 (9th Cir. 2007) ...............................31

*NASD Dispute Resolution, Inc. v. Judicial Council of California*,
    232 F. Supp. 2d 1055 (N.D. Cal. 2002).............................31

*Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. New York*,
    336 F. Supp. 3d 50 (E.D.N.Y. 2018) ...............................32

*Nat'l Audubon Soc'y, Inc. v. Davis*,
    307 F.3d 835 (9th Cir. 2002) .................................40, 41

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)..............................................13, 29, 30

iv

*Planned Parenthood of Idaho, Inc. v. Wasden*,
376 F.3d 908 (9th Cir. 2004) ...............................................................13

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ...........................................................11

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*,
343 F.3d 1036 (9th Cir. 2003) ...........................................................10

*Sec'y of the Interior v. California*,
464 U.S. 312 (1984)..............................................................................43

*State v. City of Sunnyside*,
550 P.3d 31 (Wash. 2024) ...................................................................36

*Stephenson v. Trause*,
No. 33091–1–II, 2007 WL 458068 (Wash. Ct. App. Feb. 13, 2007)...........20, 21

*Ex parte Young*,
209 U.S. 123 (1908)...................................................................*passim*

**STATUTES**

28 U.S.C. § 1291 ....................................................................................3

28 U.S.C. § 1331 ....................................................................................3

42 U.S.C. § 6297 ....................................................................................4

42 U.S.C. § 6306 ....................................................................................3

42 U.S.C. § 6316 ....................................................................................4

RCW 19.27.015.......................................................................................5

RCW 19.27.020.........................................................................5, 19, 21

RCW 19.27.031............................................................5, 19, 22, 26, 35

RCW 19.27.040................................................................................5, 21

RCW 19.27.050.........................................................................6, 19, 20

RCW 19.27.074..............................................................................5, 19

RCW 19.27A.015 ...................................................................5, 21, 22

RCW 19.27A.020 .................................................................5, 6, 21

RCW 19.27A.160 ............................................................................19

RCW 43.10.030 ...............................................................................36

RCW 43.10.110 ...............................................................................36

**REGULATIONS**

10 C.F.R. § 430.32 ...........................................................................4

WAC § 51-04-010 ...................................................................19, 22

WAC § 51-11C-10100, C101.1 .....................................................20

WAC § 51-11R-10100, R101.1 .....................................................20

**OTHER AUTHORITIES**

Executive Order GA-29 (July 2, 2020)........................................30

H.R. Rep. No. 100-11 (1987)..........................................................4

S. Rep. No. 100-6 (1987) ...............................................................4

U.S. Dep't of Energy, *Standards and Test Procedures*,
    https://www.energy.gov/eere/buildings/standards-and-test-proce-
    dures .........................................................................................4

## INTRODUCTION

Eleventh Amendment immunity and the exception to it under *Ex parte Young*, 209 U.S. 123 (1908), can present close questions that make for some hard cases. This is not one of them. This case is easy. That is because there is little, if any, new work for the Court to do since it decided a virtual carbon copy of this case a few years ago in *Mecinas v. Hobbs*, 30 F.4th 890 (9th Cir. 2022).

Under *Ex parte Young*, a plaintiff may sue "an officer of the state . . . to enjoin the enforcement of an act alleged to be unconstitutional" so long as the officer "ha[s] some connection with the enforcement of the act." 209 U.S. at 157. This Court applied the *Ex parte Young* exception in *Mecinas*. There, a statewide executive branch official (the Arizona Secretary of State) promulgated directives (the Election Procedures Manual) to local officials (county supervisors) that the local officials were legally bound to follow. *Mecinas*, 30 F.4th at 903-04. This Court held that "the Secretary's role in promulgating the Election Procedures Manual . . . far exceeded" the "some connection with enforcement" requirement necessary to trigger *Ex parte Young*'s exception to sovereign immunity. *Id*.

This case fits that same mold. Statewide executive branch officials (the Washington State Building Code Council ("SBCC") members) promulgated directives (the Energy Code) to local officials (city and county building officials) that the local officials are legally bound to follow. The SBCC members thus have

1

the same connection to enforcement that the Court held was more than sufficient to satisfy *Ex parte Young*'s requirement in *Mecinas*. Accordingly, just as the "Secretary [was] . . . properly named as a defendant under *Ex parte Young*" in *Mecinas*, the SBCC members are proper defendants under that same doctrine here. *Id.* at 904.

The Attorney General, too, is a proper defendant under *Ex parte Young*. He represents the only means for the State to force local building officials to follow the Energy Code. If such a local official defies the SBCC members and refuses to follow the Energy Code, the Attorney General will face a choice: sit idly by and allow State law to be overridden by local recalcitrance or file suit against the local official to force compliance with the mandatory Energy Code. It takes no great foresight to know which path the Attorney General is likely to take. The Attorney General thus possesses the necessary "some connection with enforcement" of the Energy Code as well. *Id.* at 903.

Unfortunately, the district court did not follow this clear chain of reasoning to arrive at these conclusions. Instead, it invented a novel promulgator/non-promulgator distinction in an effort to distinguish *Mecinas* and avoid that binding precedent. Then it went on to hold that neither the SBCC members nor the Attorney General were proper defendants under *Ex parte Young* and dismissed the case on that basis. That ruling cannot be squared with *Mecinas* or this Court's other relevant

precedents. As such, this Court should reverse it and remand for consideration of the merits of Plaintiffs' federal challenge to the Energy Code.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction over Plaintiffs' federal preemption claim under 42 U.S.C. § 6306(c) and 28 U.S.C. § 1331.

On February 25, 2025, the district court granted Defendants-Appellees' motion to dismiss and entered a final judgment in favor of Defendants-Appellees. ER-3-4. Plaintiffs-Appellants timely filed a notice of appeal on March 25, 2025. ER-80. This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.     Whether the SBCC members and the Attorney General possess the necessary connection with enforcement of the Energy Code to trigger the exception to Eleventh Amendment immunity established by *Ex parte Young*, 209 U.S. 123 (1908).

2.     Whether Plaintiffs-Appellants have standing to challenge the Energy Code as preempted by the Energy Policy and Conservation Act.

## STATEMENT OF THE CASE

**I.     EPCA regulates the energy use and efficiency of many appliances and expressly preempts state and local regulations concerning the same.**

Born out of the oil crisis of the 1970s and the accompanying concerns with energy independence, the Energy Policy and Conservation Act ("EPCA") implements a national energy policy that, among other things, regulates the energy

3

use and energy efficiency of appliances. *See, e.g.*, 42 U.S.C. § 6297(c). The thrust of EPCA is that nationally uniform energy use and efficiency standards are the best way to promote conservation goals while ensuring energy security and preserving consumer choice. *See, e.g.*, *id.*; S. Rep. No. 100-6 at 4 (1987); H.R. Rep. No. 100-11 at 24 (1987).

To accomplish that needed national uniformity, EPCA expressly preempts state and local "regulation[s] concerning the energy efficiency [or] energy use" of products for which EPCA sets energy conservation standards—with only the narrowest of exceptions to that preemption for state and local regulations that meet certain stringent statutory conditions. 42 U.S.C. §§ 6297(c)(3), 6316(b)(2)(A). Such energy conservation standards exist for a wide variety of consumer and industrial appliances, including gas stoves, ovens, furnaces, water heaters, dryers, and commercial boilers. *See* U.S. Dep't of Energy, *Standards and Test Procedures*, https://www.energy.gov/eere/buildings/standards-and-test-procedures; 10 C.F.R. § 430.32. EPCA therefore preempts any state or local regulation that "concern[s]" the "energy efficiency [or] energy use" of those appliances. 42 U.S.C. §§ 6297(c)(3), 6316(b)(2)(A).

This Court recently addressed the scope of that express preemption provision as it pertains to state and local regulations restricting the use of natural gas and natural gas appliances. Specifically, a unanimous panel of the Court invalidated the

4

City of Berkeley's indirect attack on natural gas appliances via a prohibition on the installation of natural gas piping within newly constructed buildings:

> By its plain text and structure, EPCA's preemption provision . . . encompasses building codes concerning the energy use of covered products. And thus EPCA preempts Berkeley's building code because it prohibits natural gas piping in new construction buildings from the point of delivery at the gas meter.

*Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1098 (9th Cir. 2024). The Court emphasized that "EPCA would no doubt preempt an ordinance that directly prohibits the use of covered natural gas appliances in new buildings," and "States and localities can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*." *Id.* at 1107.

## II. The SBCC adopts the Energy Code and thereby imposes restrictions on the energy use and efficiency of EPCA-covered gas appliances.

The State Building Code Act, RCW chapter 19.27, establishes for all counties and cities a "state building code" that consists of various model codes ("Building Code"). RCW 19.27.031(1). This Building Code also includes "[t]he state energy code referenced in chapter 19.27A RCW" ("Energy Code"). *Id.* 19.27.015(11)(b). The SBCC is the governmental body charged with establishing and promulgating the Codes. *Id.* 19.27.074, 19.27A.020(1). In doing so, the SBCC sets the "minimum performance standards and requirements for construction and construction materials." *Id.* 19.27.020(1). Cities and counties may not "diminish" the Codes' "minimum performance standards." *Id.* 19.27.040; *see also id*. 19.27A.015,

5

19.27A.020(7)(a). And they are required by law to apply them. *Id.* 19.27.050 ("The state building code required by this chapter shall be enforced by the counties and cities.").

In 2022, the SBCC adopted amendments to the Energy Code that banned or substantially limited the use of EPCA-covered gas appliances in many instances. ER-25 ¶ 42. These amendments applied to both the residential and commercial provisions of the Energy Code and would affect newly constructed buildings as well as alterations of or additions to existing buildings. ER-25-27 ¶¶ 43-50. These new regulations were set to go into effect on July 1, 2023, but after this Court's decision in *City of Berkeley*, the SBCC delayed their effective date to evaluate what changes were necessary to comply with EPCA. ER-27-28 ¶¶ 50, 52, 54. On November 28, 2023, the SBCC voted to adopt minimal changes to the proposed Energy Code and set its effective date as March 15, 2024. ER-28 ¶ 55.

## III. Plaintiffs bring this action to challenge the Energy Code as preempted by EPCA.

Plaintiffs—a diverse coalition of individuals, trade associations, companies, and unions—challenged the Energy Code as preempted by EPCA. ER-13. Plaintiffs sued the individual SBCC members and the Attorney General in their official capacities. *Id.* They sought a declaratory judgment that the Energy Code is preempted by EPCA because it concerns the energy use and energy efficiency of

EPCA-covered appliances and a permanent injunction enjoining the SBCC members and the Attorney General from enforcing the Energy Code. ER-42-43 ¶¶ 1-2.

## IV. Defendants move to dismiss, and the district court holds that the Eleventh Amendment bars Plaintiffs' suit and dismisses their complaint.

Defendants moved to dismiss the action for lack of subject-matter jurisdiction, arguing that the Eleventh Amendment bars Plaintiffs' suit and that Plaintiffs lack Article III standing. D.Ct. 48. Defendants argued that Plaintiffs could not avail themselves of the exception to Eleventh Amendment immunity created by *Ex parte Young*, 209 U.S. 123 (1908), because the SBCC members only promulgate the Energy Code while cities and counties are the ones who enforce it. *Id.* at 6-15. According to Defendants, this also meant Plaintiffs lacked Article III standing because, in addition to lacking a sufficient injury, any claimed harm was neither traceable to Defendants nor capable of remedy by the district court. *Id.* at 15-23.

Plaintiffs responded that under this Court's decision in *Mecinas*, 30 F.4th 890, Defendants more than satisfied *Ex parte Young*'s "modest" requirement, *id.* at 904, of a connection to enforcement. D.Ct. 52 at 4-13. Specifically, the SBCC members' promulgation of the mandatory Energy Code that cities and counties must enforce matched the role of the Arizona Secretary of State in *Mecinas*, who this Court held to be a proper defendant, *id.* at 4-8, and a suit by the Attorney General is the State's sole route to force local building officials to follow the Energy Code, *id.* at 13.

Plaintiffs also explained how the Energy Code inflicted concrete harm on them that would be remedied by a favorable outcome in this litigation. *Id.* at 14-20.

The district court granted Defendants' motion to dismiss. ER-4. It held that the *Ex parte Young* exception did not apply to any Defendant, meaning that Eleventh Amendment immunity applied and barred the suit. ER-6-12. The district court reasoned that the SBCC members only promulgate the Energy Code and have no authority to enforce it; instead, cities and counties are tasked with that role. ER-7-10. As for the Attorney General, the court held that he lacks specific enforcement authority over the Energy Code. ER-10-12. As a result of this disposition, the district court did not address whether Plaintiffs established standing. ER-12 n.3.

Plaintiffs timely appealed. ER-80.

## SUMMARY OF ARGUMENT

The Eleventh Amendment generally bars federal lawsuits brought against a state. But *Ex parte Young*, 209 U.S. 123 (1908), provides an exception from that immunity for actions for prospective declaratory or injunctive relief against state officers in their official capacities so long as the state officer has "some connection with the enforcement of the [challenged] act." *Id.* at 157. Because this rule is designed to provide a way to enforce federal law, the connection *Ex parte Young* requires is a "modest" one, *Mecinas*, 30 F.4th at 904, and this Court's precedents

8

apply the exception pragmatically to facilitate suits and vindicate the supremacy of federal law.

The SBCC members are amenable to suit under *Ex parte Young* because they promulgate the mandatory Energy Code that cities and counties must enforce. This conclusion follows directly from this Court's decision in *Mecinas*, 30 F.4th 890. That case established the rule that when a statewide official promulgates mandatory directives that local officials must carry out under state law, that suffices to trigger *Ex parte Young*'s exception to Eleventh Amendment immunity. In *Mecinas*, the Arizona Secretary of State promulgated the Election Procedures Manual that county supervisors were legally bound to follow when printing ballots. *Id.* at 903-04. This Court held that "the Secretary's role in promulgating the Election Procedures Manual . . . far exceeded" the "some connection with enforcement" requirement necessary to trigger *Ex parte Young*'s exception to sovereign immunity. *Id*. Here, the SBCC members promulgated the Energy Code that local building officials are legally bound to follow when issuing building permits. Given this substantively identical fact pattern, the result must be the same as well: The SBCC members' "role in promulgating the [Energy Code] . . . far exceed[s]" the "some connection with enforcement" requirement under *Ex parte Young*. *Id*.

The Attorney General also has the requisite connection to enforcement. Washington law authorizes him to bring suit against cities and counties that defy the

Energy Code. That is the State's only mechanism for forcing compliance. This key connection to the Energy Code's enforcement satisfies *Ex parte Young*'s "modest" requirement. *Id.* at 904.

Next, although left unaddressed by the district court, Plaintiffs easily satisfy the requirements of Article III standing. Plaintiffs' allegations meet the basic standing requirements of injury, traceability, and redressability. The Energy Code causes economic harm to homebuilders, erodes the customer base of utilities, and impairs both unions and their members. And because localities have no discretion to disregard the Energy Code, Plaintiffs' injuries stem from the Defendants' actions and can be remedied by a favorable outcome in this case. Thus, Plaintiffs have standing to challenge the Energy Code.

Accordingly, this Court should reverse the district court's dismissal and remand for consideration of the merits of Plaintiffs' claim.

## STANDARD OF REVIEW

This Court reviews de novo a district court's order on a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on account of Eleventh Amendment immunity. *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 (9th Cir. 2003) ("Whether a state has sovereign immunity under the Eleventh Amendment presents questions

of law which we review de novo. The existence of subject matter jurisdiction is a question of law which we also review de novo.") (citations omitted).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. Defendants purported to bring a factual challenge regarding two points: (1) that "the individual members of the Council 'mandated' the enforcement of the Energy Codes by local officials," and (2) that "the AG 'is authorized to enforce the Energy Code.'" D.Ct. 48 at 6 ("Neither of these allegations are true."). Similarly, the district court stated that Defendants lodged a factual challenge against "the suggestion that individual Councilmembers and the Attorney General enforce the Energy Code." ER-6. However, these issues present questions of law, not disputed facts, and the district court did not purport to issue any factual findings in its order. Thus, this case presents only pure questions of law to be decided on Plaintiffs' pleaded facts.

## ARGUMENT

### I. The SBCC members and the Attorney General are amenable to suit under the *Ex parte Young* exception to Eleventh Amendment immunity.

Both the SBCC members and the Attorney General have a sufficient connection to enforcement of the Energy Code to trigger *Ex parte Young*'s exception to Eleventh Amendment immunity. Regarding the SBCC members, this Court's decision in *Mecinas*, 30 F.4th 890, is on all fours and dictates that their role in promulgating the mandatory Energy Code that local officials must follow suffices to satisfy *Ex parte Young*'s "modest" requirement. *Id.* at 904. As for the Attorney General, his role in forcing local officials to follow the Energy Code makes him a proper defendant in this action. The district court erred in holding otherwise and dismissing Plaintiffs' case on that basis.

#### A. *Ex parte Young* permits suit against state officials that have some connection with the enforcement of violations of federal law.

"The Eleventh Amendment erects a general bar against federal lawsuits brought against a state." *Coal. to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012) (citation and internal quotation marks omitted). "However, under *Ex parte Young*, 209 U.S. 123 (1908), this immunity is subject to an exception for actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law so long as the state officer has some connection with enforcement of the act." *Mecinas*, 30 F.4th at 903 (citation and internal quotation marks omitted); *see also Ex parte Young*, 209 U.S.

at 157 ("[I]t is plain that such officer must have some connection with the enforcement of the act . . . ."). "The rule of *Ex Parte Young* gives life to the Supremacy Clause by providing a pathway to relief from continuing violations of federal law by a state or its officers." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citation and internal quotation marks omitted). This pathway to prospective relief "serve[s] the federal interest in assuring future compliance with federal law." *Id.*

*Ex parte Young*'s connection requirement is a "modest" one. *Mecinas*, 30 F.4th at 904. "The 'connection' required under *Ex parte Young* demands merely that the implicated state official have a relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'" *Id.* at 903-04 (quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)). After all, the purpose of the *Ex parte Young* exception is to facilitate suit against state officials who are violating federal law and thereby "promote the vindication of federal rights" by "hold[ing] [those] state officials responsible to the supreme authority of the United States." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984); *see also Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) ("To ensure the enforcement of federal law, however, the Eleventh Amendment permits suits for

prospective injunctive relief against state officials acting in violation of federal law.").

Three decisions from this Court illustrate how courts should apply the *Ex parte Young* exception pragmatically to achieve that necessary vindication of federal rights: *Mecinas*, 30 F.4th 890; *Eu*, 979 F.2d 697; and *Brown*, 674 F.3d 1128.

*Mecinas* provides instructive guidance on the kind of "modest" connection to enforcement *Ex parte Young* requires. There, the plaintiffs challenged Arizona's ballot order statute, which directed that "candidates affiliated with the political party of the person who received the most votes in that county in the last gubernatorial race be listed first on the general election ballot." *Mecinas*, 30 F.4th at 894. The plaintiffs requested that the Arizona Secretary of State be enjoined from ordering candidates on the general election ballot pursuant to the state's ballot order statute and instead be directed to order candidates on a politically neutral basis. *Id*. at 894-95; *see also Mecinas v. Hobbs*, 468 F. Supp. 3d 1186, 1195 (D. Ariz. 2020) (district court's recounting of relief requested by plaintiffs). The Secretary maintained that suit against her was barred by the Eleventh Amendment and that *Ex parte Young* did not apply "because she is merely the chief state election officer, not the one who prints the ballots," and thus lacked the necessary connection to enforcement of the challenged law. *Mecinas*, 30 F.4th at 903.

14

This Court disagreed. It explained that "while the county supervisors print the ballots," "they have no discretion in ordering candidate names." *Id*. at 900. "Rather they are bound to follow the Statute and the Election Procedures Manual, which is promulgated by the Secretary as a matter of Arizona law" "in the context of her role as Arizona's chief state election officer." *Id*. The Manual "contains detailed instruction on ballot design and expressly requires counties to order candidates' names on ballots in accordance with the Statute." *Id*. And because Arizona law delegated to the Secretary "the authority to prescribe rules for producing and distributing ballots in accordance with the Statute, the counties would have no choice but to follow a mandate from her directing them to order the ballots pursuant to a court's injunction." *Id*. (quotation and alteration marks omitted). The Secretary's role in ballot ordering thus "far exceeded" *Ex parte Young*'s "modest [connection] requirement." *Id.* at 904; *see also id.* at 903-04 ("The 'connection' required under *Ex parte Young* demands merely that the implicated state official have a relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'") (citation omitted).

*Eu* illustrates the pragmatic nature of the *Ex parte Young* analysis and emphasizes its aim of facilitating suits against state officials for vindication of federal rights. There, the plaintiff challenged the constitutionality of a California

statute that prescribed the number of judges on the Superior Court for Los Angeles County. *Eu*, 979 F.2d at 699. Alleging that a shortage of state court judges caused inordinate delays in civil litigation, the plaintiff sued, *inter alia*, the California Governor (Wilson) and Secretary of State (Eu) and requested a declaration that this statute violates various federal and state constitutional guarantees. *Id*. at 699-700. The Governor and the Secretary of State claimed Eleventh Amendment immunity and argued that *Ex parte Young* did not apply because they had little, if anything, to do with prescribing the number of judges on that court. *Id.* at 701, 704.

This Court saw it differently. Emphasizing that *Ex parte Young* is a pragmatic legal fiction designed to enable relief from state officials' violations of federal law, this Court found the necessary "connection to the challenged statute" in the fact that the statute was "currently being given effect by state officials, including Eu and Wilson." *Id*. at 704. Both officials "ha[d] a specific connection to the challenged statute"—"[Governor] Wilson has a duty to appoint judges to any newly-created judicial positions, and [Secretary] Eu has a duty to certify subsequent elections for those positions." *Id*. Further demonstrating the kind of practical reasoning that courts must employ in this context, the Court went on to give a frank, real-world assessment of what would follow from a favorable ruling: "Were this court to issue the requested declaration, we must assume that it is substantially likely that the California legislature, although its members are not all parties to this action, would abide by

16

our authoritative determination." *Id.* at 701. Then, "[o]nce the legislature authorized more judicial positions for Los Angeles County, Governor Wilson would . . . have a legal duty to fill those positions." *Id.* That seemingly remote connection sufficed to trigger the *Ex parte Young* exception. *Id.* at 701, 704.

*Brown* rounds out the trio by making clear that hyper-technical formalism will not stand in the way of the vindication of federal rights under *Ex parte Young*. There, the plaintiffs challenged the constitutionality of a California law barring race-based preferences in college admissions and sought to enjoin, *inter alia*, the President of the University of California from enforcing the law. *Brown*, 674 F.3d at 1131. The President argued that he lacked the necessary connection to enforcement because he "lack[ed] authority to amend, repeal, deviate from, or enforce" the challenged law. *Id.* at 1134. This Court rejected such a narrow understanding of *Ex parte Young*. *Id.* As the Court explained, the President "is duty-bound to ensure that his employees follow [the challenged law] and refrain from using race as a criterion in admission decisions." *Id.* As for the President's "argument that he is merely implementing, not enforcing [the law]," this Court held that "minimizes his role as President of the University and is inconsistent with *Eu*." *Id.* Put simply, as the head of the University of California, "[h]e enforce[d] it." *Id.*

Together, these three cases paint a clear picture of what is required to trigger the *Ex parte Young* exception. In *Mecinas*, the promulgation of mandatory directives

17

to local officials that were legally bound to execute them established the necessary connection to enforcement. In *Eu*, a seemingly remote connection to the challenged statute sufficed even though the defendants could not, on their own, grant the plaintiff the requested relief. And under *Brown*, the obligation to ensure subordinates adhere to the challenged law qualifies as enforcement. The common theme is that *Ex parte Young* calls for a practical and flexible analysis designed to facilitate suit against state officials and thereby allow the vindication of federal rights. And while "some connection" to enforcement of the challenged law is required, that connection need only be a "modest" one, consistent with the pragmatic, remedial spirit of the *Ex parte Young* exception. *Mecinas*, 30 F.4th at 903-04.

### B. The SBCC members' promulgation of the mandatory Energy Code suffices to trigger the *Ex parte Young* exception.

Applying this Court's *Ex parte Young* precedents to the facts presented here is simple and straightforward. Indeed, for the SBCC members, this case is a virtual carbon copy of *Mecinas*. There, as here, a state official promulgated binding regulations that local officials must follow as a matter of law. Under *Mecinas*, *Eu*, and *Brown*, that more than suffices to satisfy *Ex parte Young*'s "modest" requirement. *Mecinas*, 30 F.4th at 904. The district court erred in holding otherwise.

18

### 1. The SBCC members promulgated a mandatory Energy Code that local officials must enforce.

The SBCC members lie at the center of Washington's building-code regulatory regime. Washington law provides for a statewide building code in order "to require minimum performance standards and requirements for construction and construction materials, consistent with accepted standards of engineering, fire and life safety." RCW 19.27.020(1). "To achieve this purpose, the statute incorporates certain substantive requirements . . . and brings them into effect in all counties and cities," and "[t]o ensure compliance, RCW 19.27.050 expressly states that '[the Building Code] shall be enforced by the counties and cities.'" *Hay v. Tollen*, No. 50227-5-II, 2018 WL 3239278, at *6 (Wash. Ct. App. July 3, 2018).

Washington law tasks the SBCC with promulgating the mandatory statewide Building Code, which includes the Energy Code. RCW 19.27.074(1)(a) (SBCC shall "[a]dopt and maintain the codes to which reference is made in RCW 19.27.031 in a status which is consistent with the state's interest as set forth in RCW 19.27.020."); *see also id.* 19.27A.160(2) (SBCC is tasked with adopting Energy Codes "that incrementally move towards achieving [a] seventy percent reduction in annual net energy consumption"). Indeed, "[t]he primary objective of the [SBCC] is to encourage consistency in the building code throughout the state of Washington and to maintain the building code consistent with the state's interest as provided in RCW 19.27.020." WAC § 51-04-010(1); *see also* ER-76 ¶ 3 (SBCC's Managing Director

19

explaining that, "[b]y statute, the SBCC establishes the minimum building, residential, mechanical, fire, plumbing, and energy code requirements necessary to promote the health, safety and welfare of the people of the State of Washington, by reviewing, developing, and adopting the state building code"). To that end, the SBCC adopts new codes, including the Energy Code, and explicitly makes them "effective in all counties and cities of this state." *See, e.g.*, WAC § 51-11C-10100, C101.1 ("The 2021 edition of the Washington State Energy Code [for commercial buildings] is hereby adopted. The Washington State Energy Code adopted under chapter 51-11C WAC shall become effective in all counties and cities of this state on March 15, 2024."); WAC § 51-11R-10100, R101.1 ("The 2021 edition of the *Washington State Energy Code* [for residential buildings] is hereby adopted. The *Washington State Energy Code* adopted under chapter 51-11R WAC shall become effective in all counties and cities of this state on March 15, 2024.").

Importantly, the Energy Code that the SBCC promulgates is mandatory. Washington law provides that "[t]he state building code . . . shall be enforced by the counties and cities" and thereby requires those localities to enforce it. RCW 19.27.050; *see also Ahmad v. Town of Springdale*, 314 P.3d 729, 732 (Wash. Ct. App. 2013) ("The town is a 'city' for purposes of the building code, and it is required to enforce the state building code."); *Stephenson v. Trause*, No. 33091–1–II, 2007

20

WL 458068, at *4 (Wash. Ct. App. Feb. 13, 2007) ("As the City points out in its brief, municipalities are required to enforce building codes.").

To be clear, cities and counties have no discretion to disregard or water down the Energy Code's requirements. Washington law is clear on this point:

> [T]he Washington state energy code for residential buildings shall be the maximum and minimum energy code for residential buildings in each city, town, and county and shall be enforced by each city, town, and county . . . . The Washington state energy code for nonresidential buildings shall be the minimum energy code for nonresidential buildings enforced by each city, town, and county.

RCW 19.27A.015; *see also* RCW 19.27.040 ("The minimum performance standards of the codes and the objectives enumerated in RCW 19.27.020 shall not be diminished by any county or city amendments."); RCW 19.27A.020(7)(a) ("[T]he Washington state energy code for residential structures shall preempt the residential energy code of each city, town, and county in the state of Washington.").

The local officials who enforce and apply the Energy Code confirm its mandatory nature. The Director of Lewis County Community Development has explained that "Lewis County is prohibited from deviating from . . . the Washington State Energy Code" and that the "[SBCC] has mandated Lewis County to enforce the [Energy Code] regardless if the County would have adopted differing standards." ER-68-69 ¶¶ 4-5; *see also* ER-69 ¶ 6 ("[W]e are required/forced to enforce the restrictions against those choosing to live and/or do business within the boundaries of Lewis County, Washington."). Spokane County's Building Official agreed and

stated that "the [SBCC] has mandated that Spokane County enforce the [Energy Code]" and that "Spokane County officials have no discretion to disregard this directive." ER-74 ¶ 7; *see also* ER-74 ¶ 5 ("Spokane County must abide by and enforce" the Energy Code.).

Notably, the SBCC's role regarding the Energy Code goes beyond promulgating its mandatory requirements. It also assists cities and counties in their on-the-ground enforcement. Specifically, the SBCC is authorized to "issue opinions relating to the codes at the request of a local official charged with the duty to enforce the enumerated codes." RCW 19.27.031(8); *see also* WAC § 51-04-010(3) ("The council may issue opinions relating to the codes at the request of a local official charged with the duty to enforce the enumerated codes as specified in RCW 19.27.031 and 19.27A.015."). In this manner, the SBCC provides valuable advice to the local officials who are applying its statewide codes.

> **2.** **The SBCC members' adoption and maintenance of the mandatory Energy Code far exceeds *Ex parte Young*'s connection requirement.**

The SBCC members' role in adopting and maintaining the mandatory Energy Code satisfies *Ex parte Young*'s "modest" connection requirement and renders those individuals proper defendants to this suit. *Mecinas*, 30 F.4th at 904. *Mecinas* set forth a simple rule that controls here: When a statewide official promulgates mandatory directives that local officials must carry out, the statewide official has the necessary

22

connection to enforcement to trigger the *Ex parte Young* exception. Applying that rule is as straightforward here as it was in *Mecinas*. This Court's controlling precedents make this an easy case.

It is difficult to overstate the similarities between *Mecinas* and this case. Both involve a statewide executive branch official who promulgated directives to local officials that the local officials were bound by law to follow. Ticking through each part of that statement in turn, whereas in *Mecinas* the Secretary of State was the statewide executive branch official, here the SBCC members fill that role. Much like the Secretary of State promulgated the Election Procedures Manual in *Mecinas*, here the SBCC members promulgated the Energy Code. And just as the local officials in *Mecinas* had "no discretion in ordering candidate names" and were "bound to follow . . . the Election Procedures Manual," 30 F.4th at 900, here the city and county officials are bound to follow the Energy Code, *see supra* at 20-22.

Given the substantively identical nature of *Mecinas* and this case, the same result there must apply here as well. In *Mecinas*, this Court held that "given the Secretary's role in promulgating the Election Procedures Manual, [*Ex parte Young*'s] modest requirement is far exceeded." 30 F.4th at 904. Here it should hold that "given the [SBCC members'] role in promulgating the [Energy Code], [*Ex parte Young*'s] modest requirement is far exceeded." *Id.* The analysis really is that simple due to this rare instance of a truly on-all-fours binding precedent in *Mecinas*.

Looking beyond *Mecinas* to this Court's other precedents only further confirms that conclusion, as *Eu* and *Brown* provide yet more support for it. The SBCC members have a far closer connection to the Energy Code than the Governor and Secretary of State had to the challenged statute in *Eu*. After all, the Governor and the Secretary of State in *Eu* were powerless to change the number of judges on the Superior Court for Los Angeles County, and yet the Court found it sufficient that they had "a specific connection to the challenged statute" via the "duty to appoint judges to any newly-created judicial positions" and the "duty to certify subsequent elections for those positions." 979 F.2d at 704. The Court even had to take a practical, real-world view to explain how the challenge could bring about the circumstances necessary to trigger those duties: "Were this court to issue the requested declaration, we must assume that it is substantially likely that the California legislature, although its members are not all parties to this action, would abide by our authoritative determination." *Id.* at 701.

Here, in contrast, the "specific connection" is much more firmly established, as the SBCC members directly control the content of the Energy Code and can change its mandatory provisions at will. *See supra* at 19-20. No actions by the legislature or other third parties are necessary to remedy Plaintiffs' harm. The power to do so lies fully within the control of the SBCC members. So if the seemingly

24

tenuous connection in *Eu* sufficed to trigger the *Ex parte Young* exception, then the significantly stronger connection here must also pass muster.

*Brown*, too, is instructive here. There, the Court did not require the plaintiff to sue the head of admissions or the employees in the admissions department that were most directly applying the challenged statute. Rather, the President of the University of California was an appropriate defendant under *Ex parte Young* because even though he did not review individual applications, he was "duty-bound to ensure that his employees follow [the challenged law] and refrain from using race as a criterion in admission decisions." *Brown*, 674 F.3d at 1134. In other words, much like the SBCC members, he had the power to issue binding directives to the on-the-ground officials that were applying the challenged law. That qualifies as "enforc[ing] it" for purposes of the *Ex parte Young* exception. *Id.*

Caselaw from other courts bolsters this conclusion and illustrates the practical manner in which courts should apply *Ex parte Young* to facilitate the vindication of federal rights. *See, e.g.*, *Frank v. Lee*, 84 F.4th 1119, 1129, 1132-33 (10th Cir. 2023) ("Because the Secretary of State has statutory duties and obligations to maintain uniformity in elections, ensure orderly voting, and refer election code violations for prosecution, the Secretary of State certainly has 'some connection with the enforcement' of Wyoming's prohibition on electioneering too close to a polling place."), *cert. denied*, 144 S. Ct. 1349 (2024); *Mulgrew v. U.S. Dep't of Transp.*, No.

23-CV-10365 (LJL), 2024 WL 3251732, at *14 (S.D.N.Y. June 20, 2024) (state transportation agency chief engineer exercising responsibility over development of tolling program sufficed to establish connection requirement even though she did not charge or collect challenged tolls); *Helicopter Ass'n Int'l v. Hawai'i*, No. CV 23-00083 LEK-WRP, 2023 WL 6850157, at *5 (D. Haw. Oct. 17, 2023) (state transportation agency director met "the modest connection requirement of *Ex parte Young*" because he was mandated to promulgate rules and regulations and thus "[his] role goes beyond a generalized duty to enforce state law").

Lastly, it is worth pointing out that the SBCC members' role regarding the Energy Code extends beyond the promulgation of its mandatory provisions. To be clear, that alone would be more than sufficient to trigger the *Ex parte Young* exception for all the reasons discussed above. But the SBCC members also have an additional "connection with [the Energy Code's] enforcement," *Mecinas*, 30 F.4th at 903, through their statutory power to "issue opinions relating to the codes at the request of a local official charged with the duty to enforce the enumerated codes," RCW 19.27.031(8). That advisory role in the Energy Code's on-ground-enforcement puts an exclamation mark on the SBCC members' already pervasive role and further cements the conclusion that they qualify for the *Ex parte Young* exception. *Cf. Frank*, 84 F.4th at 1133 (finding the necessary connection to

enforcement, in part because "there is evidence that the Secretary of State's office has specifically fielded calls for advice related to enforcement of the statute").

In sum, this is not a close call. This Court's precedents (and those from other courts) emphasize that *Ex parte Young* should be applied to pragmatically facilitate suits for violations of federal law. What is more, this Court confronted essentially the same fact pattern that is presented here only a few years ago and held that it "far exceeded" *Ex parte Young*'s "modest" requirement. *Mecinas*, 30 F.4th at 904. The same outcome is required here. Through their promulgation of the mandatory Energy Code and additional advisory duties regarding its enforcement, the SBCC members fall within the core of the *Ex parte Young* exception.

### 3. The district court erred in ruling that the *Ex parte Young* exception did not apply to the SBCC members.

The district court took no issue with much of the above reasoning. It agreed, for example, that *Ex parte Young* requires "only a 'modest' connection." ER-7 (quoting *Mecinas*, 30 F.4th at 903-04). And it also described the core facts and holding of *Mecinas* in much the same as Plaintiffs do above:

> The Ninth Circuit found that the secretary understated her connection to the ordering of candidates on the ballot. It is true that she did not print the ballots (county supervisors did), but in doing so they were bound to follow a manual promulgated by the secretary, which instructed them to follow the challenged ballot order statute, among other requirements. The *Mecinas* court explained that the secretary of state's role in promulgating the manual that led to the printing of the ballots in accordance with the challenged statute "far exceeded" the requisite level of connection to apply the *Ex parte Young* exception.

27

ER-8 (citations omitted). Yet the district court ultimately concluded that "Plaintiffs have not met their burden to show that the Eleventh Amendment does not bar this suit against the individual Councilmembers." ER-10. That was error.

The district court erred when it invented a way to distinguish *Mecinas*. It found it critical that whereas in *Mecinas* "the Arizona legislature that enacted the ballot order statute with the intent that it would be followed, and the secretary of state enforced it by requiring in the ballot manual that county supervisors comply with it," here "[t]he Councilmembers promulgated and approved the operative version of the Energy Code with the intent that city and county officials would be bound by it." ER-9. In the district court's view, that meant that the lawsuit in *Mecinas* was "brought not against the promulgator (the legislature) but against the person bound to enforce what the legislature had promulgated," whereas here the lawsuit is "brought against the promulgators." *Id.* The district court then reasoned that the promulgator/non-promulgator distinction meant that the *Ex parte Young* exception properly applied in *Mecinas* but yet does not apply on these virtually identical facts. ER-9-10.

The problem is that the district's court novel promulgator/non-promulgator distinction has no basis in *Ex parte Young* or this Court's caselaw applying it. It is true, of course, that the SBCC members promulgated the Energy Code, but that carries no weight one way or the other in the analysis. The key question is not

28

whether the defendants promulgated the challenged law or regulation, but rather whether the defendants have "some connection with enforcement" of it. *Mecinas*, 30 F.4th at 903. There is no reason—and certainly none the district court identified— why a defendant could not both promulgate a law and have that necessary connection with enforcement of it. So this promulgator/non-promulgator point may be a technical distinction of sorts, but it is one that is irrelevant to the *Ex parte Young* analysis.

If it were otherwise and promulgator status disqualified a defendant from the *Ex parte Young* exception, all manner of mischief could follow. It would be a simple matter for a state to circumvent *Ex parte Young* entirely by collapsing the promulgation and enforcement functions. That would be antithetical to the whole point of the *Ex parte Young* exception—to facilitate suit against state officials who are violating federal law and thereby "promote the vindication of federal rights." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 105.

Indeed, the decision below provides a roadmap for how a state can use an executive branch agency to bring into effect preferred laws and policies all the while insulating itself from suit in federal court. Plaintiffs now have no way to sue in federal court the state officials that are the source of their harm. Rather, Plaintiffs must sue every county in the State and all of the cities and towns that handle their own building code matters. That needlessly frustrates—rather than facilitates—

Plaintiffs' quest for vindication of their federal rights by making the litigation substantially more costly and complicated. And all for no purpose, other than to reward the State for its clever merging of the promulgation and enforcement functions at the statewide level. That cannot be the law, especially for a doctrine whose entire purpose is to facilitate suit against state officials who are violating federal law. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 105.

The cases from other courts the district court cited in support do not alter this analysis. *See* ER-10. Starting with *Mi Familia Vota v. Abbott*, 977 F.3d 461 (5th Cir. 2020), the problem there was that state law did not grant the Texas Secretary of State the power to issue binding, non-discretionary directives to local election officials. *Id.* at 468. Indeed, as this Court explained in *Mecinas*, the Fifth Circuit's holding that the suit against the Texas Secretary of State did not fall within the *Ex parte Young* exception "was premised on a finding that an injunction against the Texas Secretary of State would still leave local officials with enough discretion to prevent meaningful relief." *Mecinas*, 30 F.4th at 903 (citing *Mi Familia Vota*, 977 F.3d at 467-68).[1] In both *Mecinas* and here, in contrast, state law grants the statewide

---

[1] It was much the same for the Texas Governor, since his executive order requiring masks to be worn in public places was not a non-discretionary directive to local officials, but rather a more typical law that local officials could enforce at their discretion. *See Mi Familia Vota*, 977 F.3d at 463-64, 467-68; Executive Order GA-29 (July 2, 2020), https://gov.texas.gov/UPLOADS/FILES/PRESS/EO-GA-29-USE-OF-FACE-COVERINGS-DURING-COVID-19-IMAGE-07-02-2020.PDF ("Local

officials with the power to issue mandatory, non-discretionary directives to local officials. That key difference in state law distinguishes these cases from *Mi Familia Vota* and establishes the necessary "some connection with enforcement." *Id.* at 903.

*NASD Dispute Resolution, Inc. v. Judicial Council of California*, 232 F. Supp. 2d 1055 (N.D. Cal. 2002)—which was vacated due to the case becoming moot while on appeal, *see NASD Disp. Resolution, Inc. v. Jud. Council of State of Cal.*, 488 F.3d 1065 (9th Cir. 2007)—has even less relevance. There, a statewide independent policymaking body promulgated ethical standards for arbitrators that would be enforced by the discretionary actions of third parties, namely private parties seeking vacatur of arbitral awards that failed to comply with the ethical standards. *NASD Dispute Resolution, Inc.*, 232 F. Supp. 2d at 1065-66. That offers little guidance for applying *Ex parte Young* in this substantially different context.

As for *Mulhern Gas Co., Inc. v. Rodriguez*, No. 1:23-CV-1267 (GTS/CFH), 2024 WL 3992588 (N.D.N.Y. Aug. 29, 2024), there the court held that the state's building code council members were not proper defendants because the statute being challenged did no more than require them to codify specific provisions in the state building code. *Id.* at *5. The members were simply "a sort of middleman" who amended the code as directed by the legislature with no discretion to deviate from

---

law enforcement and other local officials, as appropriate, can and should enforce this executive order . . . .").

the legislature's directives, and "the fact that the Code Council is tasked with integrating that mandatory policy into the Codes does not transform the members of the Code Council into the authors or the enforcers of that policy." *Id.* This menial role meant that suit against the council members would be a suit against the author of the policy—the state. *Id.* at *5-6.

Even if that reasoning could be squared with *Mecinas*—and it is far from clear that it can, given that the Arizona Secretary of State occupied virtually the same middleman role—*Mulhern* still would not support a contrary result here. For one, the court acknowledged that had the council members been given greater discretion in the content of the code amendments promulgated—*i.e.*, discretion like the SBCC members had here regarding the content of the Energy Code, *see supra* at 19-20— they may have been proper defendants. *See id.* at *6 n.5 (distinguishing a case, in part, because "the regulations promulgated by the commissioner in that case appear to have involved more discretion in their content") (citing *Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. New York*, 336 F. Supp. 3d 50 (E.D.N.Y. 2018)).

Additionally, the *Mulhern* court strongly suggested that the New York Secretary of State—who played a similar role as the SBCC members in enforcing the challenged law—*was* a proper defendant:

> [A]lthough the members of the Code Council create amendments to the Codes, such amendments must be reviewed and approved specifically by the Secretary before they can become effective. In other words, it is the Secretary, and not the members of the Code Council, that enacts

amendments to the Codes; and thus it is the Secretary that has the authority to implement the relevant statutes directing the gas equipment amendments that Plaintiffs now challenge, even if it is the members of the Code Council who prepare or write the relevant amendments. Therefore, even if it could be said that there is some measure of "enforcement" of the statutes in the adoption of the statutes' requirements into the Codes, it is the Secretary that is ultimately responsible for that enforcement by virtue of the Secretary having the final approval of any code amendments.

*Id.* at *7. In short, the council members in *Mulhern* played a different role than the SBCC members do here, and the court's analysis of the Secretary of State's role indicates that the SBCC members, who perform a similar function in having the final say over the Energy Code, are proper defendants.

With those inapposite non-binding authorities addressed, the focus can return where it belongs—on whether the defendants have that requisite connection to enforcement of the challenged law, regardless of what promulgation function the defendants may or may not also perform. Viewed through that proper lens, this case lines up on all fours with *Mecinas*. Here, as there, the connection to enforcement takes the form of state officials promulgating a set of directives that local officials must follow as a matter of state law. *See supra* at 19-22. Also here, as there, the defendants could use that enforcement authority to remedy Plaintiffs' harm, as the local officials "would have no choice but to follow a mandate from . . . [the SBCC regarding the Energy Code] pursuant to a court's injunction." *Mecinas*, 30 F.4th at 900; *see supra* at 20-22. Because that kind of enforcement role "far exceeded" *Ex*

*parte Young*'s "modest [connection] requirement" in *Mecinas*, it necessarily does so here as well, regardless of the role the SBCC members also play in the Energy Code's promulgation. *Id.* at 904.

Additionally, although the district court grounded its holding in its novel promulgator/non-promulgator distinction, it also asserted in passing that the SBCC members "lack supervisory power over the city and county officials who are responsible for enforcing the Energy Code." ER-9. Not so, as the SBCC members' authority to issue mandatory directives to those officials via the Energy Code constitutes at least some level of supervisory power. But none of that matters in any event. As *Mecinas* teaches, the key is not whether the statewide official has the power to hire and fire the local officials that carry out the last link in the chain of enforcement. The Court certainly never suggested that the Arizona Secretary of State had that power over the county supervisors that were responsible for printing the ballots. *Mecinas*, 30 F.4th at 899-900, 903-04. Rather, that case turned on the fact that the county supervisors were required by state law to follow the Secretary's directives in the Election Procedures Manual. *Id.* So too here. While the SBCC members cannot remove a local building official, they guide and control their enforcement efforts via the issuance of mandatory directives in the Energy Code. Here, as there, that promulgation of directives that are binding under state law is

what supplies the necessary "some connection with enforcement" required by *Ex parte Young*.

Lastly, even if the district court's new promulgator/non-promulgator distinction had some relevance, the SBCC members do more than merely promulgate mandatory directives. They also "issue opinions relating to the codes at the request of a local official charged with the duty to enforce the enumerated codes." RCW 19.27.031(8). That direct assistance with and facilitation of the Energy Code's on-the-ground enforcement brings the SBCC members a step beyond promulgation and thereby further establishes their "connection with enforcement" of the Energy Code. *Mecinas*, 30 F.4th at 903.

Thus, the district court's reasoning is wrong on several grounds and cannot be squared with this Court's precedents. Under that binding authority, the SBCC members "far exceed[]" the "modest" "connection with enforcement" needed to trigger the *Ex parte Young* exception. *Mecinas*, 30 F.4th at 903-04.

## C. The Attorney General also is amenable to suit under *Ex parte Young*.

The Attorney General also is a proper defendant under *Ex parte Young*. Washington law provides that the Attorney General shall "[a]ppear for and represent the state before the supreme court or the court of appeals in all cases in which the state is interested" and "[i]nstitute and prosecute all actions and proceedings for, or for the use of the state, which may be necessary in the execution of the duties of any

35

state officer." RCW 43.10.030(1)-(2); *see also* RCW 43.10.110 ("The attorney general shall have the power and it shall be his or her duty to perform any other duties that are, or may from time to time be required of him or her by law.").

Notably, the Washington Supreme Court "ha[s] held that RCW 43.10.030(1) confers broader authority than the plain text indicates." *State v. City of Sunnyside*, 550 P.3d 31, 41 (Wash. 2024) (citation and internal quotation marks omitted). Specifically, "the attorney general has discretionary authority to act in any court in matters of public concern, even without express statutory authorization, provided there is a cognizable common law or statutory cause of action." *Id*. In *City of Sunnyside*, the Attorney General brought suit against a city for its operation of its crime-free rental housing program, alleging various state and federal law violations under the state and federal Constitutions and state and federal antidiscrimination laws. *Id*. at 35-36. The court permitted the suit, emphasizing that it "ha[d] never required express statutory authorization for the attorney general to maintain a particular action under RCW 43.10.030(1)" and that the lawful operation of the program at issue was a matter of public concern. *Id*. at 43.

Just as the Attorney General brought an action against the locality in *City of Sunnyside* for its violations of state laws, here the Attorney General could bring an action against any local building officials who refuse to apply the Energy Code. That is more than a theoretical possibility. The State would face the choice between

allowing local building officials to violate the mandatory, statewide Energy Code at will or having the Attorney General, "as the legal officer of the state responsible for bringing actions on behalf of state officers, departments or other agencies," *Berge v. Gorton*, 567 P.2d 187, 191 (Wash. 1977), bring suit to force compliance and uphold that important policy. That is hardly a choice at all, as it strains credulity to suggest that the Attorney General would sit idly by and passively watch local building officials so openly defy State authority. Given the Attorney General's position as the sole route to judicial enforcement of the Energy Code on local building officials, *Ex parte Young*'s requirement of "some connection with enforcement" is more than satisfied. *Mecinas*, 30 F.4th at 903.

The district court erred in holding otherwise. It did not question the Attorney General's ability to bring an action against local building officials who refuse to enforce the Energy Code. Instead, the district court based its holding on its view that that Attorney General has only "generalized authority" in this area and that "Plaintiffs have not shown that the Attorney General is likely to invoke his authority against their interests." ER-10-11. But Plaintiffs have done precisely that. Plaintiffs' argument is not that the Attorney General's role as the chief law enforcement officer in the State renders him amenable to suit for any violation of state law. *See Ex parte Young*, 209 U.S. at 157 (rejecting that theory). Rather, it is that here a suit by the Attorney General represents the sole judicial means that the State has for enforcing

37

its Energy Code on recalcitrant local officials. That renders it exceedingly likely that the Attorney General will "invoke his authority against [Plaintiffs'] interests," ER-11, and pursue such an action should any local official defy the SBCC members' mandatory directives. That pivotal "connection with enforcement" of the Energy Code is what makes the Attorney General amenable to suit under *Ex parte Young* here. *Mecinas*, 30 F.4th at 903.

## II. Plaintiffs satisfy the requirements of Article III standing.

Given its holding that the Eleventh Amendment barred suit against Defendants, the district court did not address Defendants' alternative argument that Plaintiffs lack Article III standing. ER-12 n.3. Nonetheless, "it is sometimes appropriate for an appellate court to pass on issues of law that the trial court did not consider." *Bibeau v. Pac. Nw. Rsch. Found. Inc.*, 188 F.3d 1105, 1111 n.5 (9th Cir. 1999) (choosing to address issue not considered by district court because it "present[ed] a pure question of law which we review de novo," "the issue was fully briefed below and in this court," and "judicial economy favor[ed] an immediate decision"), *opinion amended on denial of reh'g*, 208 F.3d 831 (9th Cir. 2000). Otherwise, Plaintiffs would face the prospect of yet further delay—and perhaps even an additional appeal to this Court—before they can reach the merits in a case that has already been pending for over a year.

"To have standing, plaintiffs must establish (1) that they have suffered an injury in fact, (2) that their injury is fairly traceable to a defendant's conduct, and (3) that their injury would likely be redressed by a favorable decision." *Mecinas*, 30 F.4th at 896. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation and alteration marks omitted). "In a suit with multiple plaintiffs, generally only one plaintiff need have standing for the suit to proceed." *Mecinas*, 30 F.4th at 897. Here, Plaintiffs' allegations more than meet those basic standing requirements.

## A.    The Energy Code is inflicting actual, concrete injuries on Plaintiffs.

Plaintiffs have alleged specific injuries that are both "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Mecinas*, 30 F.4th at 897. Since "only one plaintiff need have standing for the suit to proceed," the unchallenged harm allegations of each of the seventeen Plaintiffs would have to fail before Article III jurisdiction over this action would be lacking. *Id*. Plaintiffs' harm allegations far exceed that low bar.

The Energy Code harms the homebuilder plaintiffs because it affects their bottom line. *See* ER-17-19 ¶¶ 16-21. Not only does the Energy Code force them to build homes that are "less attractive to homebuyers," but they also "must either

39

[1] choose to reduce [their] profit margins to keep homes affordable, or [2] choose to pass costs along to homebuyers, thereby increasing the costs of homes and decreasing the volume of sales [they] can make." ER-17 ¶ 17; *see also* ER-17-19 ¶¶ 16, 18-21 (similar); ER-29 ¶ 62 (SBCC's own economic analysis of Energy Code recognizes that construction costs will increase). This stymying of their business and economic harm is more than enough for an injury-in-fact. *See City of Berkeley*, 89 F.4th at 1100 (injury-in-fact satisfied where ordinance inhibited operation of the business of plaintiff's members); *see also City & County of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 944 F.3d 773, 787 (9th Cir. 2019) ("Similarly, the States have sufficiently alleged that they are facing new and ongoing operational costs resulting from the Final Rule."); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 855 (9th Cir. 2002) ("economic injury is clearly a sufficient basis for standing") (quotation and alteration marks omitted), *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002).

The utility plaintiffs also have established injury-in-fact. The Energy Code causes them economic injury "through the direct and permanent loss of would-be customers" and "ero[sion] [of their] gas customer base through the permanent loss of new customers and existing customers over time." ER-21 ¶ 31; *see also* ER-22-23 ¶¶ 32-33 (similar). The Energy Code is causing developers to forego the extension of gas service to new homes and potential and existing gas customers to

turn away from gas, all of which results in economic harm to the utility plaintiffs. *See* ER-21-23 ¶¶ 31-33; ER-47-48 ¶¶ 4-8; ER-51-52 ¶¶ 5-6; ER-55-57 ¶¶ 3-6, 8-9; ER-60 ¶ 3; ER-63 ¶ 5. That loss of customers caused by the Energy Code will also hamper the utility plaintiffs' ability to maintain and invest in their gas systems. ER-21-23 ¶¶ 31-33. The utility plaintiffs thus are suffering ongoing economic harms as a result of the Energy Code.

The union plaintiffs have adequately alleged injury-in-fact as well. *See* ER-20 ¶¶ 26-28. The Energy Code harms the union plaintiffs' members that specialize in the installation, maintenance, and repair of gas-powered systems and appliances by depriving them of their livelihoods. *Id.* As a result, the union plaintiffs have associational standing under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), which establishes that an association has standing to bring suit on behalf of its members in circumstances like those presented here. *Id.* at 343 ("[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."); *see also City of Berkeley*, 89 F.4th at 1099-1100 (association had standing because at least one member's business was harmed).

Additionally, because the union plaintiffs will have to divert significant resources away from their usual activities to assist affected union members and counteract the negative effects of the Energy Code, ER-20 ¶¶ 27-28, the union plaintiffs also have standing under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), which provides that an organization has standing to sue in its own right when the defendant's conduct has "perceptibly impaired" the organization's ability to provide its services and caused it to "devote significant resources" in response to that impairment, *id.* at 379 (citation and internal quotation marks omitted); *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663-64 (9th Cir. 2021) ("[T]he Organizations have established that the Rule has perceptibly impaired their ability to perform the services they were formed to provide" because they diverted significant resources to different missions and programs and stood "to lose a significant amount of business" and clients "had [they] not diverted resources toward counteracting the effect of the Rule.") (citation and internal quotation marks omitted).

Other Plaintiffs can establish injury-in-fact as well. *See* ER-17 ¶ 15 (homeowner Banta will face increased costs of natural gas); ER-19-20 ¶¶ 22-25 (Spokane Home Builders Association must divert resources from usual activities to educate members and local building officials about the Energy Code, and its homebuilder members face economic injury); ER-21 ¶ 30 (members of National

Propane Gas Association will face reduced business because of the Energy Code). But the Court need not consider the standing of each and every Plaintiff because where, as here, all request the same relief, only one Plaintiff need have standing for the case to proceed. *See Sec'y of the Interior v. California*, 464 U.S. 312, 319 n.3 (1984) ("Since the State of California clearly does have standing, we need not address the standing of the other [plaintiffs], whose position here is identical to the State's."); *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) ("The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others.").

### B. Plaintiffs' injuries are traceable to and redressable by Defendants' actions.

As for traceability and redressability, that inquiry largely follows the same course as the *Ex parte Young* analysis, since "[t]he question of whether there is the requisite connection between the sued official and the challenged law implicates an analysis that is closely related—indeed overlapping—with the traceability and redressability inquiry." *Mecinas*, 30 F.4th at 903. Once again, *Mecinas* provides the blueprint. Recall that there the plaintiffs sued the Arizona Secretary of State—the state-level official that issued directives regarding the ordering of candidates on the ballot—rather than the county supervisors—the local officials that actually printed the ballots. *Id.* at 894, 899-900. The Secretary maintained that the plaintiffs could

43

not satisfy the traceability and redressability prongs of standing because she did not prepare and print the ballots. *Id.* at 899-900. This Court rejected that argument because "while the county supervisors print the ballots," "they have no discretion in ordering candidate names." *Id.* at 900. Accordingly, traceability and redressability were satisfied since "the counties would have no choice but to follow a mandate from [the Secretary] directing them to order the ballots pursuant to a court's injunction." *Id.* At the very least, "an injunction against the Secretary would 'significant[ly] increase' the likelihood of relief." *Id.* (citation omitted).

This case is all on fours with *Mecinas*. Plaintiffs sued the state-level officials that promulgated binding directives that local officials must carry out and "have no discretion to disregard." *Id.* at 903; *see supra* at 20-22 (discussing localities' lack of discretion to disregard the Energy Code's requirements). And the local officials "would have no choice but to follow a mandate from . . . [the SBCC regarding the Energy Code] pursuant to a court's injunction." *Mecinas*, 30 F.4th at 900; *see supra* at 20-22 (Washington law requires cities and counties to follow the Energy Code). And as for the Attorney General, if he is enjoined from taking any steps to enforce the Energy Code, then local officials will be free to disregard it, since the State will not have a mechanism to force their compliance. Thus, as in *Mecinas*, Plaintiffs' injuries from the Energy Code are traceable to the Defendants' actions and can be redressed by their reversal.

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellants respectfully request that this Court reverse the dismissal of their First Amended Complaint, hold that Plaintiffs-Appellants have standing to bring this challenge, and remand for proceedings on the merits of their case.

Dated:  July 17, 2025

 _/s/ Devon J. McCurdy_
Callie A. Castillo
Devon J. McCurdy
BALLARD SPAHR LLP
1301 Second Ave., Ste. 2800
Seattle, WA 98101
(206) 223-7000
castilloc@ballardspahr.com
mccurdyd@ballardspahr.com

_Counsel for the Homeowners, Builders,
Suppliers, and Unions_

Respectfully submitted,

 _/s/ J. Mark Little_
J. Mark Little
Christopher E. Tutunjian
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, TX 77002
(713) 229-1234
mark.little@bakerbotts.com

Scott Novak
BAKER BOTTS L.L.P.
700 K St., N.W.
Washington, DC 20001
(202) 639-1316

Clifford S. Davidson
Amit D. Ranade
Mallory L. B. Satre
SNELL & WILMER L.L.P.
600 University St., Ste. 310
Seattle, WA 98101
(206) 741-1420

_Counsel for the Utilities_

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-2134

I am the attorney or self-represented party.

**This brief contains 10,813 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ J. Mark Little        **Date** July 17, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

47

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate Electronic Filing system, which will send notice of such filing to all registered users.

Dated: July 17, 2025

    */s/ J. Mark Little*
J. Mark Little
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, TX 77002
(713) 229-1489
mark.little@bakerbotts.com

*Counsel for the Utilities*