No. 25-2134

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JAMON RIVERA, ET AL.,

*Plaintiffs-Appellants,*

v.

KJELL ANDERSON, IN HIS OFFICIAL CAPACITY AS WASHINGTON STATE BUILDING CODE COUNCIL MEMBER, ET AL.,

*Defendants-Appellees,*

CLIMATE SOLUTIONS, ET AL.,

*Intervenors-Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Washington
No. 2:24-cv-00677-KKE
The Honorable Kymberly K. Evanson

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

Callie A. Castillo
Devon J. McCurdy
BALLARD SPAHR L.L.P.
1301 Second Ave., Ste. 2800
Seattle, WA 98101
(206) 223-7000
castilloc@ballardspahr.com
mccurdyd@ballardspahr.com

*Counsel for the Homeowners, Builders, Suppliers, and Unions*

J. Mark Little
Christopher E. Tutunjian
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, TX 77002
(713) 229-1234
mark.little@bakerbotts.com

Scott Novak
BAKER BOTTS L.L.P.
700 K St., N.W.
Washington, DC 20001
(202) 639-1316

Clifford S. Davidson
Amit D. Ranade
Mallory L. B. Satre
SNELL & WILMER L.L.P.
600 University St., Ste. 310
Seattle, WA 98101
(206) 741-1420

*Counsel for the Utilities*

## TABLE OF CONTENTS

Table of Contents ..........................................................................................i

Table of Authorities ..................................................................................... ii

Argument.........................................................................................................1

I.      The SBCC members are proper defendants under *Ex parte Young*. ...............1

     A.      A straightforward application of *Mecinas* resolves this case................1

     B.      Defendants cannot avoid *Mecinas*'s clear application here. .................4

          1.      Defendants improperly portray *Ex parte Young*'s "modest" connection requirement as an insurmountable hurdle........................................................................................4

          2.      Defendants downplay the mandatory nature of the SBCC's Energy Code..........................................................................7

          3.      *Ex parte Young* permits suit to enjoin a state executive branch official from enforcing an unlawful law. ......................12

II.     The Attorney General is a proper defendant under *Ex parte Young*. ............15

III.    If this Court reverses the judgment below, then it should address Plaintiffs' Article III standing....................................................................17

Conclusion ....................................................................................................19

Form 8. Certificate of Compliance for Briefs.........................................21

Certificate of Service ................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Coal. to Def. Affirmative Action v. Brown*,
674 F.3d 1128 (9th Cir. 2012) ...................................................................5

*Dep't of Ecology v. Wahkiakum County*,
337 P.3d 364 (Wash. Ct. App. 2014)........................................................16

*Ex parte Young*,
209 U.S. 123 (1908)..........................................................................*passim*

*Frank v. Lee*,
84 F.4th 1119 (10th Cir. 2023) ................................................................11

*Long v. Van de Kamp*,
961 F.2d 151 (9th Cir. 1992) .............................................................16, 17

*Los Angeles Cnty. Bar Ass'n v. Eu*,
979 F.2d 697 (9th Cir. 1992) .....................................................................5

*MacEwen v. Inslee*,
No. C20-5423 BHS, 2020 WL 4261323 (W.D. Wash. July 24, 2020) ........12, 13

*Mecinas v. Hobbs*,
30 F.4th 890 (9th Cir. 2022) ..............................................................*passim*

*Mendoza v. Strickler*,
51 F.4th 346 (9th Cir. 2022) ...................................................................5, 6

*Mi Familia Vota v. Abbott*,
977 F.3d 461 (5th Cir. 2020) ...................................................................13

*Munoz v. Superior Court of Los Angeles County*,
91 F.4th 977 (9th Cir. 2024) ......................................................................5

*New York v. United States*,
505 U.S. 144 (1992).................................................................................14

*Pacific Northwest Venison Producers v. Smitch*,
20 F.3d 1008 (9th Cir. 1994) .....................................................................3

*Pennhurst State School & Hospital v. Halderman*,
   465 U.S. 89 (1984)..................................................................................6

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum.*
   *Servs.*,
   946 F.3d 1100 (9th Cir. 2020) ...............................................................18, 19

*Planned Parenthood of Idaho, Inc. v. Wasden*,
   376 F.3d 908 (9th Cir. 2004) ..................................................................4

*S. Pac. Transp. Co. v. Brown*,
   651 F.2d 613 (9th Cir. 1980) ..................................................................11

*Seminole Tribe of Florida v. Florida*,
   517 U.S. 44 (1996)..................................................................................6

*United States v. California*,
   921 F.3d 865 (9th Cir. 2019) ..................................................................14

*Whole Woman's Health v. Jackson*,
   595 U.S. 30 (2021)...............................................................................5, 13

**STATUTES**

RCW 19.27.040...............................................................................................2, 9

RCW 19.27.050...............................................................................................2, 9

RCW 19.27.070................................................................................................13

RCW 19.27A.015.............................................................................................2, 9

RCW 19.27A.020.............................................................................................2, 9

RCW 43.19.005................................................................................................13

**REGULATIONS**

WAC § 51-11C-10200, C102.1 .......................................................................8

WAC § 51-11C-40335, C403.3.5.6 ................................................................9

WAC § 51-11C-50000, C501.5 .......................................................................8

iii

WAC § 51-11R-10200, R102.1 ...................................................................................8

WAC § 51-11R-50300, R503.1 ..............................................................................8, 9

iv

## ARGUMENT

### I.  The SBCC members are proper defendants under *Ex parte Young*.

The SBCC members have a sufficient connection to enforcement of the Energy Code to trigger *Ex parte Young*, 209 U.S. 123 (1908), and its exception to Eleventh Amendment immunity. This Court's on-all-fours decision in *Mecinas v. Hobbs*, 30 F.4th 890 (9th Cir. 2022), charts a simple and straightforward path to that result. Defendants argue to the contrary only by essentially ignoring that binding precedent and attempting to cast *Ex parte Young*'s "modest" requirement as an onerous obstacle. *Id.* at 904. The inescapable conclusion under this Court's precedents, however, remains that the SBCC members' role in issuing binding directives to local officials through the mandatory Energy Code suffices to satisfy *Ex parte Young* and trigger its exception to Eleventh Amendment immunity.

### A.  A straightforward application of *Mecinas* resolves this case.

As detailed in Plaintiffs' Opening Brief, this Court's decision in *Mecinas* is a directly on-point precedent that controls the outcome here. *See* Pls. Opening Br. 8-9, 12-15, 17-18, 22-23, 28-30, 33-34. The two cases are alike in virtually every respect. In both, a statewide executive branch official promulgated mandatory directives to local officials that the local officials were bound by law to follow. Specifically, in *Mecinas*, the Arizona Secretary of State promulgated the Election Procedures Manual that local officials had "no discretion" to disregard and were "bound to follow." 30 F.4th at 900. Here, the SBCC members promulgated the

1

Energy Code that city and county officials in the State of Washington are bound by law to follow and have no discretion to disregard. *See* RCW 19.27.040; *id.*19.27.050; *id.* 19.27A.015; *id.* 19.27A.020(7)(a); *see also* Pls. Opening Br. 20-22. Given that substantive identicality, because the Secretary's role in promulgating the Election Procedures Manual in *Mecinas* "far exceeded" "[*Ex parte Young*'s] modest requirement," 30 F.4th at 904, the SBCC members' role in promulgating the Energy Code necessarily does as well.

One would expect Defendants to devote a substantial portion of their Answering Brief to addressing *Mecinas*. Instead, they offer only two paragraphs on that fatal binding precedent. *See* Defs. Answering Br. 23-25. Unable to contest the substantively identical nature of the two cases in almost every respect, Defendants latch on to one difference between them. They point out that the plaintiffs in *Mecinas* challenged a *statute* that the state official enforced by issuing a binding regulatory directive to local officials, whereas Plaintiffs here challenge a *regulation* that the state officials enforce by issuing that binding regulatory directive to local officials. *Id.* at 24-25. That is a difference, but not one that matters. Regardless of what kind of law is being challenged, promulgating a binding regulatory directive to local officials constitutes the requisite "some connection with enforcement" required by *Ex parte Young*. Viewed through that lens, the SBCC members are enforcers in the

same way the Arizona Secretary of State was—both issued the same kind of binding regulatory directives to local officials to ensure enforcement of the challenged law.

Notably, Defendants later acknowledge that an official can both promulgate and enforce a law. *See* Defs. Answering Br. 28-29 ("If a state official has authority to both promulgate a rule *and* enforce it, then they will be properly subject to federal jurisdiction for prospective declaratory and injunctive relief because of their enforcement function.").[1] But Defendants fail to recognize the logical consequences of that concession in light of what *Mecinas* considers to be a connection to enforcement. If promulgating binding regulatory directives to local officials is a connection to enforcement—and *Mecinas* makes clear that it is—then the SBCC members' promulgation of such directives in the mandatory Energy Code must constitute a connection to enforcement. The SBCC members thus have both promulgation and enforcement functions regarding the Energy Code that is being challenged in this case. And that renders them subject to suit under *Ex parte Young*.

In sum, this Court's analysis can begin and end with *Mecinas*. All that is required to resolve this case is a straightforward application of that directly on-point precedent.

---

[1] Defendants cite *Pacific Northwest Venison Producers v. Smitch*, 20 F.3d 1008 (9th Cir. 1994), on this point, but it is not at all clear why. That opinion mentions neither Eleventh Amendment immunity nor the officials' enforcement authority.

3

### B. Defendants cannot avoid *Mecinas*'s clear application here.

Rather than fully engage with *Mecinas*, Defendants advance other arguments in hopes of evading its binding force. But binding precedent is not so easily circumvented. And even if it were, none of Defendants' points withstand scrutiny.

### 1. Defendants improperly portray *Ex parte Young*'s "modest" connection requirement as an insurmountable hurdle.

Defendants assert that *Ex parte Young* "is a narrow exception to Eleventh Amendment immunity." Defs. Answering Br. 17. But while the exception is narrow in the sense that it covers only those parties that have a connection to the enforcement of the offending state law, this Court has made clear that connection need only be a "modest" one. *Mecinas*, 30 F.4th at 904. None of the caselaw Defendants cite supports their attempt to turn that modest requirement into an onerous one.

First, Defendants spend nearly three pages articulating *Ex parte Young*'s requirements without ever mentioning this Court's holding in *Mecinas*. As that case explains, "[t]he 'connection' required under *Ex parte Young* demands merely that the implicated state official have a relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'" *Id.* at 903-04 (quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)). The Court appropriately described that connection-to-enforcement requirement as a "modest" one. *Id.* at 904. That relatively low bar makes sense for a doctrine whose purpose is to facilitate suit

4

against state officials who are violating federal law and promote the vindication of federal rights and the supremacy of federal law. *See* Pls. Opening Br. 13-14.

Second, Defendants ignore the caselaw highlighting this Court's pragmatic application of *Ex parte Young*, *see Mecinas*, 30 F.4th at 903-04; *Coal. to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012); *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992), and attempt to characterize *Ex parte Young* as a rigid, inflexible standard. Defs. Answering Br. 18-19. But the cases Defendants cite in support of that effort merely hold that a plaintiff must sue an executive branch official that plays some role in effectuating the violation of federal law. For example, in *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), the problem for the plaintiffs was that they had sued a state-court judge and a state-court clerk. *Id*. at 38-39. As the court explained, "[u]sually, those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties." *Id*. at 39. Similarly, in *Munoz v. Superior Court of Los Angeles County*, 91 F.4th 977 (9th Cir. 2024), this Court held that neither a state court nor a state court judge is a proper *Ex parte Young* defendant. *Id*. at 980. And in *Mendoza v. Strickler*, 51 F.4th 346 (9th Cir. 2022), this Court held that although the state transportation department officials were not the ones to issue license suspension notices to the department—state court officials did that—the state agency officials "effectuated the suspension" and "play[ed] a critical role in bringing into force the

5

actual suspension," meaning "their enforcement role is [not] too peripheral to trigger" *Ex parte Young*. *Id*. at 353. None of those holdings are in tension with applying the *Ex parte Young* exception to executive branch officials like the SBCC members who have some connection to enforcement of the challenged law.

The two other cases Defendants cite for this point dealt with vastly different issues and have no application here. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), declined to extend *Ex parte Young* to cases seeking prospective relief against state officials on the basis of their violation of *state* law rather than *federal* law. *Id.* at 103-06. And in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), the Court held that "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*." *Id*. at 74. Neither of those scenarios are presented here.

That is all that Defendants bring against this Court's repeated demonstrations that the *Ex parte Young* exception is both flexible and pragmatic. *See* Pls. Opening Br. 14-18. Once their erroneous view of the caselaw is corrected, this already straightforward case becomes even easier because the chorus of cases lends further support to the result that *Mecinas* already dictates.

6

### 2. Defendants downplay the mandatory nature of the SBCC's Energy Code.

When Defendants turn to applying *Ex parte Young*, the gist of their argument is the SBCC members only promulgate the Energy Code, whereas the cities and counties are the ones that enforce it through their review of permit applications. Defs. Answering Br. 19-20. Defendants also emphasize the discretion the cities and counties supposedly have in enforcing the Energy Code and the SBCC members' lack of supervisory authority over the localities. *Id*. at 7-8, 20-23. None of that is correct.

Defendants' argument about the role that the cities and counties play is virtually identical to the one this Court rejected in *Mecinas*. There, the Arizona Secretary of State argued that Arizona law tasked not her, but rather Arizona's county officials, with preparing and printing the ballots. *Mecinas*, 30 F.4th at 900, 903. This Court rejected that argument, reasoning that because the local officials "ha[d] no discretion to disregard" the Election Procedures Manual promulgated by the Secretary and were "bound" to follow it, "the Secretary's role in promulgating the Election Procedures Manual" and "oversee[ing] ballot production" easily satisfied *Ex parte Young*'s connection requirement. *Id.* at 900, 903-04. That holding directly applies here. Just because the local officials rather than the SBCC members are the ones who review permit applications, the fact remains that those local officials "have no discretion to disregard" the Energy Code and are "bound" to

7

follow it. *Id.* Accordingly, "the [SBCC members'] role in promulgating the [Energy Code]" satisfies *Ex parte Young*'s connection requirement. *Id.*

Defendants next downplay the SBCC's authority over the Energy Code by asserting that cities and counties have considerable discretion in enforcing the Energy Code. But Defendants point to limited discretion at the margins, not discretion to ignore the Energy Code's core requirements that are challenged in this case. *See* Defs. Answering Br. 7-8.

For example, Defendants point out that local officials may approve an alternative material, design, or method of construction that complies with the intent of the Codes and performs not less than the equivalent of what the Codes require. WAC § 51-11C-10200, C102.1; WAC § 51-11R-10200, R102.1. They also note that the provisions "relating to the construction, *repair*, *alteration*, restoration and movement of structures, and *change of occupancy*" are not mandatory for "historic buildings" if "compliance with that provision would threaten, degrade or destroy the historic form, fabric or function of the building." WAC § 51-11C-50000, C501.5. Similarly, the Energy Code provides that building alterations "which do not fully conform to all of the requirements of this code" are permissible when "full compliance is physically impossible and/or economically impractical" so long as the alteration "improves the energy efficiency of the building" or "is energy efficient and is necessary for the health, safety, and welfare of the general public." WAC

8

§ 51-11R-50300, R503.1. And, lastly, when compliance with requirements for "dedicated outdoor air systems" is "impractical"—that is, where the system "cannot effectively be utilized due to an unusual use or configuration of the building"—"it is permissible to provide an approved alternate means of compliance that achieves a comparable level of energy efficiency as the requirement(s) deemed impractical." WAC § 51-11C-40335, C403.3.5.6.[2]

While those provisions grant local officials some narrow discretion to adapt to specific situations when implementing the Energy Code, they do not transform the Energy Code into a mere suggestion that local officials can choose to follow or disregard. Indeed, even Defendants do not make that claim. *See* Defs. Answering Br. 20 (local building code officials "decide whether to approve or deny those applications *based on whether they comply with the Codes*") (emphasis added). Nor could they, as Washington law is abundantly clear that the localities must ensure adherence to the Energy Code's requirements, *see* RCW 19.27.050, and cannot water them down, *see id.* 19.27.040; *id.* 19.27A.015; *id.* 19.27A.020(7)(a); *see also*

---

[2] Defendants also assert that one county's code purports to give this single county discretion over some matters, such as when there are practical difficulties or when there are conflicts between codes. Defs. Answering Br. 20-21. But Defendants do not explain either how that conflicts with the Energy Code or why one county's code is relevant to the question of what the Energy Code's plain text requires.

Pls. Opening Br. 20-22.[3] That is the key point, for if the Energy Code is a binding directive to local officials—as it plainly is—then *Mecinas* applies to mandate application of the *Ex parte Young* exception here.

For their last attempt at minimizing the SBCC members' role in enforcement, Defendants protest that the SBCC members lack supervisory power over the city and county officials enforcing the Energy Code. Defs. Answering Br. 22-23. While it is true that the SBCC members cannot hire and fire the local officials, their authority to issue mandatory directives to those officials via the Energy Code constitutes at least some level of supervisory power. *See* Pls. Opening Br. 34-35. That reflects the same kind of supervisory authority that was present in *Mecinas*, where the Secretary of State could not fire the local election officials but could issue them mandatory directives through the Election Procedures Manual. *Mecinas*, 30 F.4th at 899-900, 903-04. In fact, the SBCC members' supervisory functions here are *more* extensive than those of the Secretary of State in *Mecinas* because they also assist with enforcement by issuing opinions concerning the Energy Code when a local official so requests. *See* Pls. Opening Br. 26-27, 35.

---

[3] Defendants point out that one county's code states that the use of natural gas will be permitted until regulations are amended to address the natural gas restriction repealed by Initiative 2066. Defs. Answering Br. 21. That was an extraordinary circumstance in which a county had to decide which of two contradictory provisions of Washington state law to follow. Moreover, just because the county enacted that provision in its code does not necessarily mean it is valid.

10

Defendants miss the point when they complain that the SBCC members' authority to issue non-binding opinions does not satisfy *Ex parte Young*. Defs. Answering Br. 29-30 (citing *S. Pac. Transp. Co. v. Brown*, 651 F.2d 613, 615 (9th Cir. 1980)). Plaintiffs do not assert that "non-binding enforcement advice is sufficient under *Ex parte Young*." *Id*. at 30. Rather, the point is that while the SBCC members' adoption and maintenance of the Energy Code is wholly sufficient on its own to subject them to suit, the SBCC members' opinion authority provides additional confirmation of the already correct outcome. *See* Pls. Opening Br. 26-27 (citing *Frank v. Lee*, 84 F.4th 1119, 1133 (10th Cir. 2023)). And, notably, Defendants do not dispute that under *Frank*, the issuing of this kind of non-binding authority can be relevant to a defendant's connection to enforcement. Defendants instead claim only that providing non-binding advice alone does not suffice. Perhaps so, but that is not the question at issue here.

In sum, local officials are bound to enforce the SBCC's Energy Code and lack discretion to disregard its requirements. Because Defendants cannot dispute this dispositive fact, the SBCC members have the requisite "modest" connection to enforcement required by *Ex parte Young*.

11

### 3.  *Ex parte Young* permits suit to enjoin a state executive branch official from enforcing an unlawful law.

Defendants also claim that *Ex parte Young* does not apply here because the mere adoption of a challenged law is not a sufficient connection to its enforcement. Defs. Answering Br. 27-28. That contention is wrong on a number of levels.

Defendants' suggestion that all the SBCC members do is adopt regulations undersells their roles. The SBCC members promulgate mandatory and binding directives to local officials in the same way that the Arizona Secretary of State did in *Mecinas. See supra* at 1-3. That alone establishes the requisite connection to enforcement under this Court's precedents. And the SBCC members' additional opinion-providing function to further facilitate the Energy Code's enforcement bolsters that already clear conclusion. *See supra* at 10-11.

Defendants' string citation of cases that supposedly support their position is unavailing as well. *See* Defs. Answering Br. 27-28. Plaintiffs have already explained why those authorities are inapposite—namely because they did not concern statewide officials with the power to craft policy and issue mandatory, non-discretionary directives to local officials. *See* Pls. Opening Br. 30-33. Defendants do not even attempt to answer those arguments. As for Defendants' lone new case— *MacEwen v. Inslee*, No. C20-5423 BHS, 2020 WL 4261323 (W.D. Wash. July 24, 2020)—it is equally irrelevant. That case dealt with a scenario in which the governor issued a proclamation, but local officials retained discretionary authority over its

12

enforcement. *Id.* at \*1-2. Just as that fact distinguishes the present case from *Mi Familia Vota v. Abbott*, 977 F.3d 461 (5th Cir. 2020), *see* Pls. Opening Br. 30 & n.1, it does the same for *MacEwen*.

Then there is Defendants' suggestion that permitting this case to proceed would open a Pandora's box of suits against state legislatures. Not so. The Supreme Court has already held that *Ex parte Young* is reserved for "seek[ing] judicial orders in federal court preventing *state executive officials* from enforcing state laws that are contrary to federal law." *Whole Woman's Health*, 595 U.S. at 39 (emphasis added). Plaintiffs do not argue otherwise, and they follow precisely the Supreme Court's direction by suing the officials of an entity that Defendants admit is "housed within … a State executive branch agency." Defs. Answering Br. 15; *see also* RCW 19.27.070 ("There is hereby established in the department of enterprise services a state building code council, to be appointed by the governor."); *id.* 43.19.005(1) ("The department of enterprise services is created as an executive branch agency."). That in no way opens the door to suit against any state official in the legislative branch.

In a similar vein, Defendants suggest that a federal court lacks the authority to issue the relief requested by Plaintiffs, namely a declaration that the Energy Code is preempted by EPCA and an injunction enjoining the Code's effectiveness and prohibiting its enforcement. Defs. Answering Br. 25. But the relief Plaintiffs request

13

is no different than what was requested in *Mecinas*. As Plaintiffs have explained, *see* Pls. Opening Br. 43-44, the injury in *Mecinas* was redressable because "the counties would have no choice but to follow a mandate from [the Secretary] directing them to order the ballots pursuant to a court's injunction." 30 F.4th at 900. And at the very least, "an injunction against the Secretary would 'significant[ly] increase' the likelihood of relief." *Id.* (citation omitted). So too here, as local officials "would have no choice but to follow a mandate from [the SBCC members] directing them to" cease applying the challenged provisions of the Energy Code. *Id.*

More fundamentally, "the power of federal courts to order state officials to comply with federal law" is well-established. *New York v. United States*, 505 U.S. 144, 179 (1992) (emphasis omitted). Not only does Article III "plainly confer[] this authority on the federal courts," but also "the Supremacy Clause makes federal law paramount over the contrary positions of state officials." *Id*. "[T]he power of federal courts to enforce federal law thus presupposes some authority to order state officials to comply." *Id*.; *see also United States v. California*, 921 F.3d 865, 889 (9th Cir. 2019) ("The solution to avoid conflict preemption" is to "invalidate the state enactment.").

Notably, Defendants acknowledge that a federal court has the authority to order what regulations a state can and cannot adopt. Defs. Answering Br. 27 n.5 ("Where a statute directs an official to adopt regulations, and a plaintiff challenges

14

the statute, the official may be sued to enjoin them from implementing the challenged law by adopting regulations."). Why that authority turns on whether the plaintiff challenges the statute directing promulgation of regulations or the regulations themselves Defendants do not explain. Thus, like their efforts to distinguish *Mecinas*, Defendants manage only to identify a distinction without a difference.

\* \* \*

This case should begin and end with *Mecinas*. Defendants offer no reason why that precedent does not provide the blueprint for resolving this case. This Court should reverse and hold that the SBCC members are proper defendants under *Ex parte Young*.

## II. The Attorney General is a proper defendant under *Ex parte Young*.

Like the SBCC members, the Attorney General is also a proper defendant in this action. Plaintiffs' argument is not that the Attorney General's role as the State's chief law enforcement officer renders him amenable to suit for any violation of state law. *See Ex parte Young*, 209 U.S. at 157 (rejecting that theory). Rather, Plaintiffs' point is that a suit by the Attorney General represents the State's sole means for enforcing its Energy Code should local officials depart from it. As a result, it is a virtual certainty that, should local building officials violate the mandatory Energy

15

Code, the Attorney General will bring an action against them for their violation of state law. *See* Pls. Opening Br. 36-37.

Notably, Defendants do not dispute much of that. They do not identify an avenue other than a suit by the Attorney General for forcing local officials to comply with the Energy Code. Nor do they claim that the Attorney General lacks the ability to bring an action against local building officials who refuse to apply the Energy Code. He plainly could bring suit on behalf of the State asserting that the locality's action is preempted by state law. *See Dep't of Ecology v. Wahkiakum County*, 337 P.3d 364, 365 (Wash. Ct. App. 2014) (Washington State Department of Ecology brought and prevailed in action challenging county ordinance as conflicting with state law). Defendants even do not deny that the Attorney General would, in fact, bring suit against localities that depart from the Energy Code. *See* Defs. Answering Br. 31-35.

Rather, Defendants assert that Plaintiffs' "speculation" regarding how the Attorney General would respond to localities' departures from the Energy Code "falls far short of the required 'fairly direct' enforcement connection to the challenged law." Defs. Answering Br. 34 (citing *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992)). But there is nothing speculative about pointing out what even Defendants—including the Attorney General—cannot deny would happen if local officials refuse to follow the Energy Code. The Attorney General would bring

16

suit to ensure the enforcement of the Energy Code. After all, the alternative is that state law would be thwarted at the whim of any local official who disagrees with it.

Defendants cite *Long* as their principal authority on this point, but it does not aid them. There, the challenged statute authorized warrantless searches of the plaintiffs' property by law enforcement officials, and the plaintiffs attempted to rely on "the general supervisory powers of the California Attorney General" to satisfy *Ex parte Young*. *Long*, 961 F.2d at 152. The Court held that that the suit could not proceed "[a]bsent a real likelihood that the [Attorney General] will employ his supervisory powers against plaintiffs' interests." *Id*. Here, however, that "real likelihood that the [Attorney General]" will seek to enforce the Energy Code is present in full force—because, again, it strains credulity to suggest that the Attorney General would stand idly by and allow state law to be thwarted by local intransigence.

In sum, the Attorney General's unique ability to pursue an action against any local official who defies the SBCC members' mandatory directives is a pivotal "connection with enforcement" of the Energy Code that makes the Attorney General amenable to suit under *Ex parte Young* here. *Mecinas*, 30 F.4th at 903.

## III. If this Court reverses the judgment below, then it should address Plaintiffs' Article III standing.

If this Court agrees with Plaintiffs and reverses the district court's dismissal on Eleventh Amendment grounds, then there is every reason for it to address

17

Defendants' standing challenge as well. After all, if this Court reverses the district court's *Ex parte Young* holding, then there is little work left for it to do on standing. In that event, Plaintiffs necessarily would have established traceability and redressability since those largely follow the *Ex parte Young* analysis. *See* Pls. Opening Br. 43-44. And Plaintiffs' injury-in-fact is established many times over. *See id.* at 39-43.

Nevertheless, Defendants disagree with addressing standing now, but they do so in a self-defeating manner. Specifically, in support of delaying resolution of the standing issue, Defendants cite the general rule favoring remand of issues that the district court did not address. Defs. Answering Br. 36-37. "The general rule, however, is flexible—an appellate court can exercise its equitable discretion to reach an issue in the first instance." *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1110 (9th Cir. 2020). "When proper resolution is beyond any doubt, when injustice might otherwise result, and when an issue is purely legal are exceptions to the general rule." *Id.* (internal citation and quotation marks omitted). In addition, this Court "consider[s] the effect a delay would have and whether significant questions of general impact are raised." *Id.* at 1110-11 (internal citations and quotation marks omitted); *see also id.* at 1112 ("The delay remand would cause is unnecessary in this case because the resolution is beyond doubt."). All of these factors favor resolving the issue of standing now, not

18

later. *See* Pls. Opening Br. 38-44. There is simply no reason for Plaintiffs—and other members of the public—to incur substantial harms due to delay when the resolution of this legal question is not in doubt.[4]

Defendants' only other argument against review now is the possibility of "changed circumstances." Defs. Answering Br. 37. Yet Defendants do not identify any such changes that affect the fitness of this case for resolution. They point to Initiative 2066, which could affect the SBCC's authority regarding the regulation of natural gas and potentially moot this case. *Id.* at 37-38. But a Washington court has declared Initiative 2066 unconstitutional, *id.* at 38, and so the circumstances that existed when Plaintiffs filed suit continue to exist now. If these changed circumstances ever arise, this Court or the district court can assess mootness at that appropriate time. But Defendants' suggestion that remand is needed because maybe one day in the future the case could become moot makes no sense.

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellants respectfully request that this Court reverse the dismissal of their First Amended Complaint, hold that Plaintiffs-

---

[4] This is true even though Defendants have not briefed the merits of the standing issue in this Court. Defendants had the opportunity to do so because Plaintiffs raised standing in their opening brief. *See Planned Parenthood of Greater Wash. & N. Idaho*, 946 F.3d at 1112 n.2. And, in any event, Defendants briefed the issue in the district court, and that brief is part of the record. *Id.*

19

Appellants have standing to bring this challenge, and remand for proceedings on the merits of their case.

Dated:  October 8, 2025                    Respectfully submitted,

  */s/ Devon J. McCurdy*                        */s/ J. Mark Little*
Callie A. Castillo                         J. Mark Little
Devon J. McCurdy                           Christopher E. Tutunjian
BALLARD SPAHR L.L.P.                       BAKER BOTTS L.L.P.
1301 Second Ave., Ste. 2800                910 Louisiana St.
Seattle, WA 98101                          Houston, TX 77002
(206) 223-7000                             (713) 229-1234
castilloc@ballardspahr.com                 mark.little@bakerbotts.com
mccurdyd@ballardspahr.com

                                           Scott Novak
*Counsel for the Homeowners, Builders,*    BAKER BOTTS L.L.P.
*Suppliers, and Unions*                    700 K St., N.W.
                                           Washington, DC 20001
                                           (202) 639-1316

                                           Clifford S. Davidson
                                           Amit D. Ranade
                                           Mallory L. B. Satre
                                           SNELL & WILMER L.L.P.
                                           600 University St., Ste. 310
                                           Seattle, WA 98101
                                           (206) 741-1420

                                           *Counsel for the Utilities*

20

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-2134

I am the attorney or self-represented party.

**This brief contains 4,621 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ J. Mark Little          **Date** October 8, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

21

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate Electronic Filing system, which will send notice of such filing to all registered users.

Dated:  October 8, 2025

    */s/ J. Mark Little*
J. Mark Little
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, TX 77002
(713) 229-1489
mark.little@bakerbotts.com

*Counsel for the Utilities*

22